

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
12/13/2012

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 12-30554** |
| GENE MICHAEL MONTEAGUDO | § | **CHAPTER  7** |
| | § | |
| Debtor(s). | § | **JUDGE ISGUR** |
| | § | |
| | § | |
| DISCOVER BANK, ISSUER OF THE | § | |
| DISCOVER CARD | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | **ADVERSARY NO. 12-03146** |
| | § | |
| GENE MICHAEL MONTEAGUDO | § | |
| | § | |
| Defendant(s). | § | |

## SUPPLEMENTAL MEMORANDUM OPINION

On August 1, 2012, this Court ordered Jason Anderson to comply with Fed. R. Bankr. P. 7009 if he files future complaints in the Southern District of Texas seeking an exception to discharge under 11 U.S.C. § 523(a)(2).  In order to ensure such compliance, the Court required Anderson to file certain documents in all cases in which he makes an appearance.  Anderson timely appealed the order.  Following review, the United States District Court has remanded and instructed this Court to clarify the legal basis for issuance of the August 1 Order.

### Short Answer

The Court issued the August 1, 2012 order under its inherent power.

### Analysis

A bankruptcy court has the inherent power to impose sanctions.  *In re Yorkshire, LLC,* 540 F.3d 328, 332 (5th Cir. 2008); *In re Asheru,* 395 Fed.Appx. 136 (5th Cir. 2010).  The sole requirement for the exercise of the Court's inherent authority is a finding that the litigant engaged in bad faith conduct.  *Yorkshire, LLC,* 540 F.3d at 332.  When issuing sanctions under its inherent power, a bankruptcy court should limit the sanction to what is sufficient to deter future misconduct.  *Id.*

The Court recognizes that not every instance of bad faith justifies a sanction.  For two reasons, the Court finds that a sanction was justified in this case.  First, the Court is concerned

about a large number of adversary proceedings with plaintiffs seeking recovery of relatively small amounts and alleging fraud but failing to do so with particularity.  If the Plaintiff is allowed to ignore its obligations to detail fraud with particularity, this imposes an additional cost on Defendants.  When that additional cost accounts for a significant portion of the funds in play, it is a powerful tool for the litigant who wields it.

This case is a prime example.  The initial complaint concerned only $6,000.00.  The settlement was for a payment of $50.00 per month, without interest.  It is conceivable that such a settlement could be coerced from an innocent defendant wishing to avoid the legal costs of filing a motion to compel compliance with Rule 7009, attending a hearing on the motion, and then responding to an amended complaint.

Second, the Court is concerned by Anderson's obstinate refusal to comply with Rule 7009 despite repeated attempts by the Court to obtain compliance.

Taken together, these facts compelled the Court to correct Anderson's bad faith misconduct.

### Did Anderson Act in Bad Faith?

Under *Yorkshire*, the initial question is whether Anderson acted in bad faith.  It is important to distinguish Anderson's initial conduct that precipitated the show cause order from his bad faith in responding to the Court's show cause order.

At a July 30, 2012 hearing on the Court's Show Cause Order, one of the key issues concerned Anderson's credibility.  There is no question that Anderson responded to the Show Cause Order in bad faith.  He failed to advise his client of the order that required his client to be present.  He prevaricated when the Court made inquiry about why he failed to inform his client.  The Court evaluated Anderson's testimony at the hearing trough the prism of his bad faith conduct in responding to the show cause order.  Nevertheless, although that conduct was appalling, it cannot and did not serve as the basis for the imposition of the August 1, 2012 order.

It was Anderson's litigation tactics, repeated in a number of cases, that prompted the Show Cause Order.  And it was Anderson's repeated and intentional failure to comply with his duties that led the Court to conclude that his conduct in filing "bare bones" § 523(a)(2) complaints was in bad faith.

A review of the Court's records reflects that Anderson was plaintiff's counsel in 68 complaints seeking relief under § 523(a)(2) in the 22 months prior to issuance of the Court's August 1, 2012 order.

In previous adversary proceedings, the Court had repeatedly cautioned Anderson that his complaints did not comply with the Federal Rules of Bankruptcy Procedure.  Those cautionary statements did not produce any change in behavior.  In one of those cases, the Court refused to sign a default judgment when Anderson's pleadings failed to satisfy Rule 9.  *See In re Fuentes,* 474 B.R. 497 (Bankr. S.D. Tex. 2012).  Rather than amend his complaint in *Fuentes*, Anderson

argued that the Court was required to enter a default judgment for his client.  *Id.*  At oral argument on May 14, 2012, Anderson explained his reasoning.  Under Anderson's theory, he need not comply with Rule 7009 in his initial complaint.[1]  At oral argument, he explained that his normal practice was to amend his non-compliant complaints after a defendant filed a motion to dismiss for failure to comply with Rule 7009.  Under Anderson's theory of practice, the adversarial system should require a defendant to demand compliance with the Federal Rules of Bankruptcy Procedure.  If a defendant does not complain, then noncompliance should be accepted.

With that backdrop (and Anderson's mishandling of the Court's Show Cause Order), the Court listened to Anderson's explanation at the show cause hearing.  The following excerpts from the July 30, 2012 hearing underscore the Court's concern that Anderson was acting in intentional derogation of his duty to comply with the Federal Rules of Bankruptcy Procedure, and that the Court's prior cautionary statements were inadequate to resolve the issue:

Court:           In pleadings filed since the Court has held that you're not complying with Rule 9, that have been filed in the Southern District of Texas, what steps have you taken to comply with Rule 9?

THE WITNESS:    I suppose this is the problem of having an attorney on the stand. I'm not aware that this Court has held that any particular Complaint does not comply with Rule 9. I know that this Court has raised that concern in this case. I'm eminently aware of that. And I know that there are other cases not involving my client present in this courtroom where opposing Counsel has also raised that issue, which is waiting for a dispositive ruling one way or another. But I'm not aware of any finding that's been made.

THE COURT:     Well, we have -- I mean Judge Steen's opinion plainly held that way, right, from the Southern District of Texas? I held that way in a case in which you represented a client in the Valley. You sought reconsideration and I said you didn't comply with Rule 9 –

THE WITNESS:   Uh-huh.

THE COURT:     -- and that you had to. And was that ambiguous?

---

[1]   At the July 30, 2012 hearing, Mr. Anderson argued that the Court misinterpreted his statements.  As set forth in the Court's original Memorandum Opinion, the Court did not misunderstand Mr. Anderson's statements.

THE WITNESS:    Well, the issue in that case, Your Honor, was whether the Court was going to grant the motion for reconsideration.

THE COURT:      Correct. And I said that I would grant it as to the failure to appear at the hearing, but that you had to have a meritorious defense or a meritorious case and that you had to comply with Rule 9 and you hadn't.

THE WITNESS:    On the facts of that case, Your Honor, I would say that that was the Court's ruling.

THE COURT:      That's correct. Now what my question to you is I want to know what you're doing these days to comply with Rule 9?

THE WITNESS:    To be honest, Your Honor, every case has different facts. I think the facts in this case are different from the facts in the case in the Valley the Court referenced. I think that there are a lot of similarities between many of these cases. Obviously, we have similar fact patterns. We've got an individual who's filed an individual bankruptcy. And there is a creditor who is issued a credit card who feels in some way that there is a cause of action. And the pleadings are drafted appropriately. My view, I believe I've expressed in briefing in both this case and then more thoroughly in a few other cases, Your Honor, is that under *Field versus Mann* [sp.ph.] the Rule 9 applies only to the actual fraud cause of action; 523(a)(2)(A) has three separate causes of action. I think that to the extent that we're talking about Rule 9 applying to actual fraud, it remains my personal and professional opinion that my pleadings satisfy the Fifth Circuit standards of what it means to plead fraud. And we get that from cases like *In Re: Mercer*, which explains that fraud isn't proven by direct evidence, it comes from cases that are applied in this Circuit by analogy. Like *In Re: Dougherty* [sp.ph.] we see how courts apply a multi-factor test to ascertain the intent of individuals, and that's why --For example, Your Honor, were I to plead fraud in a Federal Court cause of action for a non-bankruptcy matter, say a car salesman who sells

an automobile to a couple. Car salesman says, "You should buy this car, it's got 30,000 miles, it's good to go." When in fact five minutes earlier the car salesman turned the odometer back from 80,000 miles. So right there you have the fraudulent statement. There's an actual physical statement, words that were said to a person. Now that is different in credit card cases because the representation that's made isn't a verbal representation by the cardholder. The cardholder doesn't call Discover and says, "Hey, I guess I got you here, I'm going to use your card and I'm going to make these charges and there's nothing you can do about it." That's not what happens. What happens is the case law indicates that there's a representation of intent to repay when the card is used, and that's the representation that my client relies upon in extending and continuing to extend credit to these individuals. And I believe that that in its totality is what Rule 9 is intended to satisfy. And we have Ninth Circuit – excuse me, Fifth Circuit case law --

[Interposed objection]

....

THE COURT:      Yeah. Let's go back and try and answer my question.

THE WITNESS:    Oh, absolutely.

THECOURT:       You're arguing with me as to whether you need to comply with Rule 9. That's a done deal. You're going to comply with Rule 9.

THE WITNESS:    I agree.

THE COURT:      I want to know what you have now done differently, if anything, to comply with Rule 9, or are you not doing anything differently to comply with Rule 9 'cause you think you complied with it before?

THE WITNESS:    One thing I think going forward, Your Honor, I think to clarify the issue to do differently is to separate Complaints I file into separate causes of action. Typically things are pled in

the alternative under both convention and notice pleading; things are pled that way. To separate out count one, count two, count three, I think that might help this Court's analysis to show which facts are leading into which causes of action. And that way when there's an actual fraud cause of action asserted, that that particular count is able to be traced back to the relevant facts listed out in the Complaint. And to the extent that there's a factual inquiry as to whether or not those are enough facts to meet Rule 9, I think that that's something that's obviously going to be on a case-by-case basis. I, going forward, obviously will be particularly mindful of pleading as many facts as possible. I think the difficulty in a fraud cause of action is that fraud is concealed. It's an activity that people don't want others to know about. And so –

THE COURT:      Have you taken any steps in any Complaints that you have filed to implement any different method of pleading your Complaints in the last couple of months?

THE WITNESS:    I'm sorry, but I believe I answered that question by saying I plead causes of action separately.

THE COURT:      No, you told me what you might do in the future. I want to know if you've actually done anything so far.

Having carefully considered (and now reconsidered) the evidence at the July 30, 2012 Show Cause Hearing, the Court concludes that Anderson's repeated filing of § 523(a)(2) complaints in this District that failed to follow the Federal Rules of Bankruptcy Procedure was done in bad faith for the purpose of imposing additional litigation costs on defendants.  The Court finds that Anderson's actions were intentional.

### Is the Court's Order Properly Limited?

The second *Yorkshire* issue is whether the Court's August 1 Order is properly limited. Initially, the Court notes how narrow the August 1 Order is:

- The August 1 Order only applies to the filing of adversary complaints.  It does not apply to any pleadings filed in main bankruptcy cases.

- The August 1 Order only applies to the filing of complaints in the United States Bankruptcy Court for the Southern District of Texas.

- The August 1 Order only applies to complaints filed for exceptions to discharge.

- The August 1 Order only applies to complaints filed for exceptions to discharge under § 523(a)(2).

- No monetary relief was awarded.

- No continuing education was required.

Given the very narrow scope of the Order, the Court now addresses how it determined the scope.

The above quoted testimony from Mr. Anderson, combined with his prior intentional refusal to comply with Fed. R. Bankr. P. 7009 absent objection, compelled the Court to ensure future compliance with Rule 7009.  Mr. Anderson's testimony reflected his continued belief that compliance with Rule 7009 is discretionary.  He continued to refer to case law that he believed excused full compliance with Rule 7009.   Since the Fifth Circuit has explicitly held that compliance with Rule 7009 is mandatory in § 523(a)(2) cases (*See  In re Mercer,* 246 F.3d 391, 401–02 (5th Cir. 2001), an order merely requiring Rule 7009 compliance would have been inadequate; Mr. Anderson continues to ignore Fifth Circuit law when he feigns compliance with Rule 7009.    Accordingly, the Court required that Mr. Anderson include a copy of the Memorandum Opinion to assure that other judges of this District would be aware of the situation. The Court simply could not trust Mr. Anderson to comply with the order on his own.

## Conclusion

The Court recognizes that the District Court expedited consideration of Mr. Anderson's appeal.  Accordingly, this Court has swiftly addressed the remanded issue to allow the District Court an opportunity to address the merits of Mr. Anderson's appeal.

Having reviewed the August 1, 2012 Order, this Court believes that it was correctly issued under the Court's inherent power.

The Clerk is directed to file a copy of this pleading in this adversary proceeding and in civil action H-12-2481.

SIGNED **December 12, 2012.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE